INGRAM, Judge
(dissenting):
I respectfully dissent from the majority holding of the court in this case. The issue presented to this court in this case is, as I understand it:
Does timely notice of nonrenewal pursuant to § 16-24-12, Code of Ala. (1975), forestall the acquisition of tenure in a given category of tenurable employment (e.g., principal) if given during the third year of probationary (untenured) service in that category?
In holding that it does not, the majority here has relied largely on two previous cases from this court, Wooten v. Alabama State Tenure Commission, 421 So.2d 1277 (Ala.Civ.App.1982), and Debrow v. Alabama State Tenure Commission, 474 So.2d 99 (Ala.Civ.App.1984), writ quashed, 474 So.2d 101 (Ala.1985).
Wooten held that a tenured instructor obtains tenured status as a principal after he has served in this capacity for three consecutive years regardless of whether he is reemployed as a principal for the fourth year. It was decided in Debrow that the only two actions proper regarding the contract of a tenured teacher were to supersede it or to cancel it; that a teacher, even if nontenured, has expectancy of a year’s employment, continued right to employment, and pay for the remainder of such period; and that an employing board, once it had given a third year contract to a probationary principal, could not effectively vote to deny him tenure by transferring him to another position before he completed the term of his contract; and finally that employment termination was ineffective to prevent his acquiring tenure as a principal.
In my effort to disentangle the holding of Wooten from the present case, I initially concluded that perhaps Wooten should be revisited because of the inconsistency it creates by giving third year probationary principals an “advantage” in obtaining tenure as a principal. This legal gratuity has created an inconsistency which gives offense to certain other statutory sections encompassed in the tenure law. A closer reading into the matter with a view towards giving a broad interpretation to the whole operation and administration of the tenure law now leads me to the conclusion that while Wooten is founded on tenuous constructional grounds, it does not stand for the proposition that § 16-24-12 is inoperative.
But before I leave Wooten, I feel inclined to discuss briefly my opinion that it creates an interpretational barrier to the whole concept of tenure acquisition for principals.
First, I point out that the textual separation between § 16-24-2(a) and (b) found in the 1975 Code is not found in the session law, Act No. 806, Acts of Alabama 1951. In fact, no separate subparagraph “(b)” is found in the session law. While this somewhat simple change did nothing to change the actual wording of the statute, it did create a mechanical separation which was not present in the act as it was passed by the legislature in 1951.
I am inclined to consider a more syntactical interpretation or a synthesis as it were. One definition of synthesis is: “composition or combination of parts or elements so as to form a whole; the combining of often diverse conceptions into a coherent whole.” Webster’s New Collegiate Dictionary (7th ed. 1969). Therefore, my interpretational *212 scheme begins with the 1975 Code writers’ perhaps indiscriminate creation of a sub-paragraph “(b)” which provides the separation above mentioned. Inasmuch as the provision establishing a separate three-year period of probation service in Act No. 806 is uttered in the same statutory breath as the general provision establishing the requirement for reemployment for a fourth year, it seems to me unlikely that the failure to expressly repeat the fourth year reemployment requirement means that the legislature intended to establish a different standard whereby principals could acquire tenure more easily than instructors.
In my mind, the purported difference between acquisition of tenure at the end of the third year and “upon reemployment” for a fourth successive year is illusory. Inasmuch as § 16-24-12, Code, obligates an employing board to notify all probationary instructors, principals, or supervisors of its intention not to reemploy them the following year on or before the last day of the current school term, an employee who is not so notified will gain tenure upon the completion of the school year or term anyway. Hence, a third year probationary teacher who is not so notified is deemed automatically reemployed (and thus tenured) as a matter of law upon completion of the third consecutive year of employment.
By virtue of this notice requirement, boards of education are effectively required to make and communicate reemployment decisions for all probationary employees on or before the last day of the school term. Thus, a third year probationary principal who has not been notified of non-employment (nonrenewal) will as a matter of law be tenured upon completion of the third consecutive school year or term of employment.
I have been unable to find anything in Wooten, supra, or in § 16-24-12, Code, which exempts third year probationary principals from operation of the preemption notice of the nonretention provision of the statute.
The majority holding in the present case would construe applicable statutes so as to fix the end of the second (not third) year of probationary service as the “point of no return” for boards of education. Beyond that point, a “probationary principal” is invested with immunity from transfer and is entitled to the full panoply of hearing rights accorded fully tenured principals upon cancellation of their continuing contract under § 16-4-9, Code.
By operation of the preemptive notice provision of § 16-24-12, Code, the appellant here could not have acquired tenure as a principal since he did, in fact, receive notice of nonrenewal on or before the last day of the school year.
It seems that the expectation of a year’s employment bears no relationship to the expectation of permanent employment established by tenure. The latter expectation is created not by the extension of a “third year” contract, which by definition is finite in duration. Rather, it is only upon completing the third year of probationary service without receiving notice of nonem-ployment (nonrenewal) that a legitimate expectation of permanent employment arises.
All reemployment decisions regarding probationary employees are necessarily made before the end of the current year of service. Nothing about that fact negates or exempts third year principals from the operation of the renewal provision of the statute. The notice of nonemployment provision of § 16-24-12, Code, applies to all probationary teachers, which includes all certified persons who are employed as instructors, principals, or supervisors in the public schools of this state.
I cannot agree with the majority that under Debrow the appellant, Cooper, was tenured as a principal at the time he was notified of his nonrenewal as a principal and that, as a consequence, his transfer was with loss of status and therefore invalid. In fact, I find that Debrow is materially distinguishable and thus not controlling here in that the central issue in the present case — the efficacy of notice of nonrenewal during the third year of probationary employment — was not an issue in Debrow. Also, the application and preemptive effect of notice of nonrenewal (“nonemployment”) *213 under § 16-24-12 on the acquisition of tenure was not addressed in Debrow. The statute was never mentioned.
The Debrow court held that acquisition of tenure on the part of a third year principal could not be defeated by an attempted transfer from the position during the term of his contract, i.e., before the succeeding school year. The court further said that having given Debrow a third year contract, the board could prevent his attaining tenure as a principal only by cancellation of that contract during its term as provided by § 16-24-9.
In concurring in quashing certiorari in Ex parte Alabama State Tenure Commission, 474 So.2d 101, 102 (Ala.1985) (the Debrow case), the Chief Justice agreed that the Court of Civil Appeals had correctly applied Wooten, supra, and Ex parte Hayes, 405 So.2d 366 (Ala. 1981), to invalidate Debrow’s attempted transfer:
“In other words, although Debrow had not completed three years of continuing service as a principal, he was nevertheless entitled to procedural due process before being transferred, by virtue of his expectancy of employment to the end of the school term in the position he held.” (Emphasis added.)
474 So.2d at 102.
However, he rejected any suggestion that Debrow had acquired tenure as a principal or that the board’s options were limited to statutory procedures applicable to cancellation of tenured principals’ contracts:
“I do not agree that § 16-24-3 makes the provisions of § 16-24-9 and § 16-24-10 applicable in a case such as this. De-brow had not attained continuing service status at the time the Board took the action complained of here. Debrow was only entitled to procedural due process.”
474 So.2d at 102.
At a minimum, the Chief Justice’s concurrence establishes that the holding and result in Debrow are not dependent on a conclusion that a cancellation hearing under § 16-24-9 is the “only” way to prevent attainment of tenure after having contracted with a probationary principal for a third year of probationary employment.
The majority here holds in effect that the board was powerless to prevent Cooper’s acquisition of tenure as a third year principal except by cancellation of his contract.
I cannot agree with this holding because I can perceive no magical significance to the contract of a third year probationary principal. It does not purport to be and is not an “entitlement” or “shortcut” to tenure. It is no different in form or effect from the contract of a second or even first year probationary principal.
Even to conclude that the holding in Wooten that principals are tenured after completing three years of untenured service is compatible with § 16-24-12, Code, nothing in either Wooten or § 16-24-12, Code, exempts third year probationary principals from operation of the preemptive notice of the nonretention provision of the statute. The mere existence of an employment contract does not change the analysis since all probationary employees serve under annual contract and since the provisions of § 16-24-12 and all related statutes are read into and control conflicting contractual provisions.
It is also important to note that our Supreme Court recognized in Ex parte Hayes, supra, that although, as a matter of statute, an employing board has discretion to terminate probationary employment by proper notice at the end of the term without explanation, the same statute, § 16-24-12, Code, gives rise to an expectation of one year’s employment — in effect, a year-to-year contract. That expectancy (“property interest”) in employment to the end of the term may not be summarily interrupted before the end of the term:
“The nontenured teacher does not enjoy the full panoply of rights enjoyed by the tenured teacher. But to the extent that the nontenured teacher is entitled to expect to work to the end of the school term, that teacher cannot be terminated before the year is out without the protection of procedural due process.” (Emphasis added.)
405 So.2d at 371.
Where there is no midyear termination, transfer, or other disruption proposed, no *214 expectation of continuing employment to the end of the term is threatened. Under such circumstances, the unambiguous preemptive notice provision (teacher employed the following year unless notified to the contrary before the end of the school term) of § 16-24-12, Code (which both creates and qualifies the expectation according to Hayes, supra), can be applied according to its plain meaning without compromising any constitutional, statutory, or contractual interests held by the probationary principal.
Under the majority holding in this case, I perceive that an employing board will be handicapped by being forced to make its decision to terminate probationary principals one year short of the time required by the statute. This will work a disadvantage to those probationary principals who need that third year in which to develop their potential to a standard of competency where the board would be confident that their attainment of tenure as principal would be commensurate with the broader duties and higher managerial and leadership responsibilities required of a principal.
I agree that the trial court correctly distinguished this case from Debrow by properly recognizing the critical distinction between a claimed deprivation of tenure rights and an alleged denial of appropriate procedural due process. The former is grounded in state statute; the latter in the Fifth and Fourteenth Amendments to the United States Constitution.
Debrow dealt essentially with constitutional due process — not deprivation of not-yet-attained tenure status as a principal.
For the reasons stated herein, I would hold that appellant here is an untenured principal in that the employing board can, and did in this case, prospectively prevent appellant’s attainment of tenure by its timely notice of nonrenewal, and did so in the same manner as it would with any other probationary teacher.